1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11    AARON ANTHONY VRH                      Case No. 1:20-cv-00581-JLT-CDB  (HC)

12                    Petitioner,            **FINDINGS AND RECOMMENDATION**
                                             **TO DENY PETITION FOR WRIT OF**
13            v.                             **HABEAS CORPUS AND DECLINE TO**
                                             **ISSUE CERTIFICATE OF**
14    GENA JONES,                            **APPEALABILITY**[1]

15                    Respondent.            **14-DAY DEADLINE**

16                                           (Doc. 34)

17

18          On March 23, 2022, Petitioner Aaron Anthony Vrh ("Petitioner"), a state prisoner

19   proceeding through counsel, filed a Third Amended Petition for Writ of Habeas Corpus alleging

20   two grounds for relief ("Petition").  (Doc. 34).  For the reasons set forth below, the undersigned

21   recommends that the district court deny the Petition and decline to issue a certificate of

22   appealability.

23   **I.       PROCEDURAL AND FACTUAL BACKGROUND**

24          A jury in the Stanislaus County Superior Court convicted Petitioner of unlawful sexual

25   penetration and assault with intent to commit mayhem.  (Doc. 41-2 at 1; *see* Doc. 54-2 at 231-

26

27

28   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule
     302(c)(17) (E.D. Cal. 2022).

33).[2]  The court sentenced defendant to 25 years to life in prison.  (Doc. 41-1; Doc. 41-2 at 4).

On appeal, the Fifth Appellate District Court of Appeal summarized the pertinent facts of the underlying offense:[3]

> The victim, Jane Doe, was romantically involved with Vrh on an intermittent basis from approximately August 2011 through November 2013. On July 5, 2013, Doe was hospitalized with a severe rectal injury that required surgery and left her with a prolapsed rectum. She told her healthcare providers that she had fallen on a toilet plunger. The hospital contacted the Turlock Police Department. A police officer questioned Doe about the incident, and she provided the same explanation. The officer photographed bruises on Doe's legs and around the site of injury. Although the officer did not believe her story, there was no further criminal investigation at that time.
>
> On or about April 23 , 2014, Doe contacted the Merced County Sheriff's Department to report a physical altercation that had occurred between her and Vrh the previous evening. The investigating deputy photographed bruises on her arms. While speaking with the deputy, Doe began to cry and disclosed that Vrh was responsible for the rectal injury she sustained in July 2013. The sheriff's department did not have jurisdiction over the prior incident, and thus referred the matter to the Turlock Police Department.
>
> A detective spoke to Doe and other witnesses about the events of July 5, 2013. Vrh voluntarily participated in a non-custodial interview, during which he initially repeated the story about Doe having injured herself by falling on a toilet plunger. He purported to recall hearing "a bunch of screaming and stuff in the bathroom," and subsequently discovering that Doe, in a drunken stupor, had "missed the toilet and sat on the plunger that was right next to the toilet." Later in the interview, Vrh retracted those statements and claimed Doe was accidentally injured during consensual sexual activity.
>
> The Stanislaus County District Attorney charged Vrh with sexual penetration by a foreign object (Pen. Code; § 289, subd. (a)(l); count 1) and mayhem (Pen. Code, § 203 ; count 2). Count 1 included enhancement allegations of personal infliction of great bodily injury by means of sexual penetration (Pen. Code, § 667.61 , subd. (c)(5), (d)(6)) and under circumstances involving domestic violence (*id.*, § 12022.7, subd. (e).) The case went to trial in October 2015.
>
> The victim testified that she and Vrh had gotten into a fight in the early morning hours of July 5, 2013, at which time he threatened to

---

[2] Record citations herein are to the CM/ECF-assigned pages.

[3] These facts are entitled to a rebuttable presumption of correctness.  *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1011 (9th Cir. 2015).

subject her to extreme digital sexual penetration. He carried out the threat by forcing his entire hand into her rectum. The pain caused her to lose consciousness. She awoke to find herself in the shower and Vrh "running around saying, 'Oh, God, oh God, what did I do?'" She agreed to go along with the story about a toilet plunger so that Vrh would not be arrested.

Doe's testimony described prior acts of domestic violence, including when Vrh allegedly broke her nose during an argument on or about December 31, 2012. One of the victim's friends, who had lived with her and Vrh during part of 2013, testified to having witnessed Vrh be abusive toward Doe on multiple occasions. She recalled seeing "[h]im dragging her hair, pulling her [by the] hair through the hallway of the house," and alleged that he had once tied Doe to a bed and held a pillow over her face.

Over the objections of defense counsel, the trial court permitted two of Vrh's ex-girlfriends to testify about uncharged acts of prior domestic violence. The first of those witnesses alleged that Vrh had kicked her in the head and punched her in the stomach when she was two months pregnant. He was also verbally abusive and sometimes spit on her during arguments. The second witness alleged similar forms of verbal abuse and recounted an incident during which Vrh had violently pulled her hair. She reported the hair-pulling incident to police, but later declined to press charges. The second witness's testimony was partially corroborated by that of a Turlock police officer who had spoken to her on the night of the alleged incident.

Vrh testified on his own behalf. He accused Jane Doe of being a habitual liar and mentally unstable (Doe admitted on direct examination that she suffered from bipolar disorder). With regard to Doe's July 2013 injury, he testified that they had engaged in consensual foreplay in a "pitch black" room and used lubricant to facilitate the activity. He had intended to digitally penetrate her vagina, but accidentally inserted his hand into her rectum. Doe later concocted the plunger explanation and repeated it to others despite Vrh's warning that nobody would believe such a story. He denied committing prior acts of domestic violence against Doe, maintaining that she had broken her nose on New Year's Eve by tripping over footwear while intoxicated.

With regard to his ex-girlfriends, Vrh portrayed the first witness as a methamphetamine addict but nevertheless admitted to having punched her during a heated argument. She had repeatedly punched and kicked *him*, which caused him to reflexively strike her in the head. He claimed to have "barely bumped" her stomach with his foot while trying to defend himself. Vrh alleged that the second witness still held a grudge against him for having "sued her in court for false arrest," presumably in relation to the hair-pulling allegation. In his version of events, her "very long hair" accidentally "got caught in between" his hand and the steering wheel of his car during a verbal disagreement.

3

(Doc. 41-2 at 2-4). The appellate court affirmed Petitioner's convictions. (*Id.* at 9). On January 31, 2018, the California Supreme Court summarily denied review. (*See* Doc. 41-4). Petitioner filed a petition for a writ of certiorari in the United States Supreme Court on April 9, 2018, which was denied on June 18, 2018. (*See* Doc. 41-5). Following the denial of certiorari, Petitioner filed pro se habeas corpus petitions in the state courts but did not receive any relief. (*See* Docs. 41-6, 41-7, 42-1, 43-1, 44-1 through 44-3).

Petitioner, acting pro se, filed his initial federal habeas petition on April 24, 2020, and filed his first amended petition on May 1, 2020. (Docs. 1, 8). The first amended petition was dismissed after preliminary screening and Petitioner, now represented by counsel, filed a second amended petition on August 31, 2020. (Docs. 9, 14). The same day, Petitioner moved for a *Rhines* stay to allow him to exhaust certain claims in state court. (Doc. 15). The Court granted the motion on November 24, 2020. (Doc. 20).

Petitioner filed a counseled habeas petition in the Fifth Appellate District Court of Appeal on September 28, 2020. (Doc. 44-4). The appellate court summarily denied the petition on August 12, 2021. (Doc. 44-5). Petitioner then filed a petition in the California Supreme Court, and, on September 22, 2021, the court denied review. (Docs. 44-6, 44-7).

On December 31, 2021, Petitioner returned to federal court to request that the *Rhines* stay be lifted, and he be allowed to file the Petition now before the Court. (Doc. 28). Petitioner also filed a memorandum in support of the Petition. (Doc. 29). The Court lifted the stay, ordered the Petition be docketed, and ordered Respondent to respond to the Petition. (Docs. 33, 35). Respondent moved to dismiss the Petition as untimely and lodged portions of the state court record in support. (Docs. 39, 41, 41-1 through 41-7, 42, 42-1, 43, 43-1, 44, 44-1 through 44-7). However, on January 31, 2025, the district court adopted the undersigned's recommendation and denied the motion to dismiss. (Docs. 50, 52). Subsequently, on February 26, 2025, Respondent filed an answer (Doc. 55), arguing Petitioner was not entitled to habeas relief, and lodged the remainder of the state court record in support (Docs. 54, 54-1 through 54-5). Petitioner filed a traverse on March 26, 2025. (Doc. 56).

4

1    Petitioner presents two grounds for relief: (1) the trial court violated his due process rights

2    when it allowed evidence of prior acts of domestic violence to be admitted and (2) Petitioner

3    received ineffective assistance of appellate counsel because appellate counsel did not raise a

4    claim of ineffective assistance of trial counsel based on trial counsel's failure to redact statements

5    by an investigating officer in the transcript and video of Petitioner's pretrial statement.  (Doc. 34

6    at 5-7).

7    **II.    STANDARD FOR FEDERAL HABEAS RELIEF**

8    A federal court's statutory authority to issue habeas corpus relief for persons in state

9    custody is set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

10   Penalty Act of 1996 (AEDPA).  AEDPA requires a state prisoner seeking federal habeas relief to

11   first "exhaust[t] the remedies available in the courts of the State."[4]  28 U.S.C. § 2254(b)(1)(A).

12   Where the state court adjudicates the claim on the merits, a petitioner is not entitled to habeas

13   relief unless the adjudication (1) "resulted in a decision that was contrary to, or involved an

14   unreasonable application of, clearly established Federal law, as determined by the Supreme Court

15   of the United States," or (2) "resulted in a decision that was based on an unreasonable

16   determination of the facts in light of the evidence presented in the State court proceeding."  28

17   U.S.C. § 2254(d).

18   "Deciding whether a state court's decision 'involved' an unreasonable application of

19   federal law or was 'based on' an unreasonable determination of the facts requires the federal

20   habeas court to 'train its attention on the particular reasons—both legal and factual—why state

21   courts rejected a state prisoner's federal claims."  *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

22   When the state court's decision "does not come accompanied with [its] reasons" for the decision,

23   a federal court "should 'look through' the unexplained decision to the last related state-court

24   decision that does provide a relevant rationale."  *Id.*  However, when there is no reasoned decision

25   to "look through," it may be presumed—in "the absence of any indication or state-law procedural

26   principles to the contrary"—that the state court adjudicated the claim on the merits and the

27   petitioner must show "there was no reasonable basis for the state court to deny relief."

28   ───────────────

[4] The statute allows for limited exceptions inapplicable here.  *See* 28 U.S.C. § 2254(b)(1)(B).

1   *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011).

2          Under 2254(d)(1), a decision is "contrary to" clearly established federal law if the state

3   court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case

4   law; or (2) reached a different result from the Supreme Court when faced with materially

5   indistinguishable facts. *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court decision

6   involves an "unreasonable application" of the Supreme Court's precedents if the state court

7   correctly identifies the governing legal principle but applies the facts of the petitioner's case in an

8   objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005), or "if the state

9   court either unreasonably extends a legal principle from [Supreme Court] precedent to a new

10  context where it should not apply or unreasonably refuses to extend that principle to a new

11  context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). "A state court's

12  determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

13  jurists could disagree' on the correctness of the state court's decision." *Harrington*, 62 U.S. at

14  101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The petitioner must show that

15  the state court decision "was so lacking in justification that there was an error well understood

16  and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at

17  103.

18         Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely

19  because the federal habeas court would have reached a different conclusion in the first instance."

20  *Wood v. Allen*, 558 U.S. 290, 301 (2010). "State courts are accorded substantial deference. If

21  reasonable minds reviewing the record might disagree about the finding in question, on habeas

22  review that does not suffice to supersede the trial court's determination." *Marks v. Davis*, 106

23  F.4th 941, 949 (9th Cir. 2024) (citations and quotation marks omitted) (quoting *Brumfield v.*

24  *Cain*, 576 U.S. 305, 314 (2015)).

25  **III.    ANALYSIS**

26      **A. Ground One – Prior Acts Evidence**

27         In ground one, Petitioner challenges the admission of prior acts of domestic violence

28  against two former girlfriends and alleges such violated his due process rights. (Doc. 34 at 5;

6

Doc. 29 at 33-34).  Because Petitioner raised this claim on direct appeal and the California

Supreme Court summarily denied review, this Court looks to the opinion of the Fifth Appellate

District as the last reasoned decision.  *See Wilson*, 584 U.S. at 125.

### 1. Background

At trial, the prosecutor planned to call two of Petitioner's former girlfriends to testify

regarding acts of domestic violence against them by Petitioner.  In addressing whether the

evidence would be allowed, the trial court concluded it was permissible under California

Evidence Code § 1109 and was not so prejudicial that it should be excluded under California

Evidence Code § 352.  (Doc. 54-4 at 24, 29-30).

Danica Jean Esparza testified that while she was romantically involved with Petitioner in

2003, she pushed him, and he then kicked her in the head and punched her in the stomach.  (Doc.

54-5 at 17).  She described negative behavior directed at her by Petitioner when exchanging their

children, including spitting at her and kicking her car, but no other physical violence.  (*Id.* at 21-

24).  Laura Valencia also testified to having a previous relationship with Petitioner and

experiencing domestic violence, including him spitting on her and grabbing her by her hair.  (*Id.*

at 27-33).  Valencia reported the incident to the police but asked the district attorney to drop the

charges because of Petitioner's children.  (*Id.* at 35).

On direct appeal, Petitioner challenged the admission of the prior acts of domestic

violence.  (*See* Doc. 41-2 at 4-9).  In addressing Petitioner's arguments, the appellate court first

recognized that pursuant to California Evidence Code § 1101, character or propensity evidence is

generally not admissible to prove a person's conduct on a specified occasion but Evidence Code §

1109 "supersede[s] section 1101 in cases involving sex crimes and domestic violence."  (*Id.* at 4-

5).  Under § 1109, evidence of other domestic violence is admissible so long as it is not

inadmissible under Evidence Code § 352, meaning its probative value is not substantially

outweighed by the probability that its admission would create substantial danger of undue

prejudice, confusing the issues, or misleading the jury.  (*Id.* at 5).

The appellate court then addressed Petitioner's argument that § 1109 "infringes upon the

constitutional guarantees of due process and equal protection of laws" and concluded "the

1    constitutionality of section 1109 under the due process clauses of the federal and state

2    constitutions has now been settled." (*Id.* at 6 (quoting *People v. Jennings*, 81 Cal. App. 4th 1301,

3    1309-13 (2000)). Specifically, the court noted that the reference to § 352 within § 1109 "provides

4    a realistic safeguard that ensures that the presumption of innocence and other characteristics of

5    due process are not weakened by an unfair use of evidence of past acts." (*Id.* (quoting *People v.*

6    *Brown*, 192 Cal. App. 4th 1222, 1234 (2011)).

7        Turning to the trial court's decision to allow the evidence, the appellate court found the

8    trial court did not abuse its discretion. (*Id.* at 6-9). The appellate court explained that the

9    "charged offense involved heinous, unconscionable behavior" such that "the evidence of prior

10   misconduct paled in comparison to the crimes for which Vrh was prosecuted" and "the prior bad

11   acts were substantially probative of Vrh's propensity to commit violence against a romantic

12   partner." (*Id.* at 7-8). The court further found the "lack of corresponding convictions [was]

13   inconsequential" because "Vrh admitted to punching one of his ex-girlfriends and acknowledged

14   that the other woman's hair was pulled during an argument, albeit under disputed circumstances."

15   (*Id.* at 8). While the court expressed concern that the punching incident occurred nearly ten years

16   before the charged offense, which weighed in favor of exclusion, it concluded "temporal

17   proximity was not a dispositive factor." (*Id.* at 8-9). Finally, the appellate court rejected

18   Petitioner's argument that the evidence risked juror confusion because the challenged evidence

19   comprised a total of 24 pages of the reporter's transcript and "[t]he central focus of the

20   prosecution's case was Vrh's relationship with Jane Doe and the subject events of July 2013."

21   (*Id.* at 9). The court summarized:

22       [B]oth sides presented valid arguments on the section 1109 issue.
         The trial court would have been justified in ruling either way, that
23       is, in choosing to admit or exclude the evidence of prior domestic
         violence. We cannot say the potentially prejudicial impact of the
24       challenged evidence clearly outweighed its probative value, nor can
         we conclude the decision to admit the evidence was "so irrational or
25       arbitrary that no reasonable person could agree with it." (*People v.*
         *Carmony* (2004) 33 Cal.4th 367, 377 [articulating the abuse of
26       discretion standard].)

27   (*Id.*).

28

8

1

**2. Law and Analysis**

2    To the extent Petitioner is challenging the trial court's decision to allow the evidence

3 under § 1109, federal habeas relief "does not lie for errors of state law." *Estelle v. McGuire*, 502

4 U.S. 62, 67 (1991) (citation omitted).  Additionally, "[t]he Supreme Court has not clearly held

5 that admission of prior bad acts to prove propensity violates due process." *Flowers v. Foulk*, 774

6 F. App'x 1019, 1022 (9th Cir. 2019) (citing *Holly v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir.

7 2009)), *cert. denied*, 140 S. Ct. 379 (2019).  Thus, Petitioner is not entitled to habeas relief simply

8 because the prior acts evidence was admitted under California law.

9    However, the Supreme Court recently clarified that "the Due Process Clause forbids the

10 introduction of evidence so unduly prejudicial as to render a criminal trial fundamentally unfair."

11 *Andrew v. White*, 145 S. Ct. 75, 83 (2025).  On federal habeas review, "[t]he ultimate question is

12 whether a fairminded jurist could disagree that the evidence 'so infected the trial with unfairness'

13 as to render the resulting conviction or sentence 'a denial of due process.'" *Id.* (quoting *Romano*

14 *v. Oklahoma*, 512 U.S. 1, 13 (1994) (citation omitted)).  In answering this question, courts should

15 consider whether there is a permissible inference that may be drawn from the evidence; the

16 strength of the prosecution's case; the extent to which the evidence was similar to the crime for

17 which the petitioner was on trial; the extent to which the prosecution relied on the evidence

18 during trial; and whether the other crimes evidence was emotionally charged. *Kipp v. Davis*, 971

19 F.3d 939, 957 (9th Cir. 2020).  Even if a federal constitutional error occurred, federal habeas

20 relief is only warranted "if the petitioner can establish that the error resulted in 'actual

21 prejudice.'" *Id.* at 958 (quoting *Davis v. Ayala*, 576 U.S. 257 (2015)).  In other words, the federal

22 court must have "grave doubt about whether a trial error of federal law had substantial and

23 injurious effect or influence in determining the jury's verdict" and "[t]here must be more than a

24 reasonable possibility that the error was harmful." *Id.* (quotation marks omitted).

25    The state appellate court rejected Petitioner's argument that the admission of the prior

26 acts evidence violated his due process rights, and Petitioner fails to explain how that decision was

27 wrong or objectively unreasonable as required to show habeas relief warranted, aside from

28 arguing that the uncharged prior acts were "qualitatively different" from the acts at issue "so as to

9

1    nullify any probative value of the uncharged acts." (Doc. 56 at 14). But even if such evidence

2    was unduly prejudicial or irrelevant, Petitioner is not entitled to habeas relief given the absence of

3    clearly established federal law precluding the admission of such evidence. *See Holley*, 568 F.3d

4    1101.

5           Further, even if the trial court erred in allowing the evidence, Petitioner cannot show that

6    the evidence had a substantial and injurious effect on the jury's verdict. As the state appellate

7    court observed, the testimony regarding the prior acts was brief in comparison to the remainder of

8    the trial testimony focusing on the July 2013 incident with Doe and the prior acts testimony

9    involved acts far less heinous than those at issue at trial. The evidence was relevant given

10   Petitioner's assertion that he would never intentionally harm Doe, and Petitioner had an

11   opportunity to cross examine both witnesses and testified regarding his version of how the

12   respective incidents occurred. Considering the evidence as a whole, even if the admission of the

13   prior bad acts evidence amounted to constitutional error, it did not have a substantial and

14   injurious effect on the jury's verdict as necessary to warrant federal habeas relief. Thus, the state

15   appellate court's decision was not contrary to, or an unreasonable application of, clearly

16   established federal law, nor was it based on an unreasonable determination of the facts. The

17   undersigned recommends that ground one be denied.

18           **B. Ground Two-Ineffective Assistance**

19           In his second ground for relief, Petitioner asserts he received ineffective assistance of

20   appellate counsel because appellate counsel failed to raise an ineffective assistance of trial

21   counsel claim based on trial counsel's failure to object to, and seek redaction of, comments made

22   by a law enforcement officer during a pretrial interrogation. (Doc. 34 at 7; Doc. 29 at 11).

23   Petitioner raised this claim to the state courts on post-conviction review and the state courts

24   summarily denied review. (*See* Docs. 44-4 through 44-7). While the "post-conviction decision is

25   unaccompanied by an explanation," Petitioner still "bears the burden of demonstrating that there

26   was no reasonable basis for the state court to deny relief." *Demetrulias v. Davis*, 14 F.4th 898,

27   906 (9th Cir. 2021) (quotation marks omitted) (quoting *Richter*, 563 U.S. at 98).

28

10

1      **1. Background**

2      At trial, the prosecution called Jason Tosta, a detective with the Turlock Police

3      Department, to testify.  (Doc. 54-4 at 224-25).  Tosta interviewed Petitioner regarding the

4      incident in question.  (*Id.* at 225).  The interview was recorded, and both the video recording and

5      a transcript of the interview were admitted into evidence over defense counsel's objection.  (*Id.*at

6      226-40; *see* Doc. 54-3 at 3-33).  Specifically, counsel argued that Tosta's statements regarding the

7      amount of force used to cause Doe's injury amounted to an improper lay opinion and his

8      statements on the video were hearsay.  (Doc. 54-4 at 230-32, 240).  The trial court indicated it

9      would allow the evidence because the defense could cross examine Tosta, Tosta's statements

10     were not offered for their truth, and Tosta's statements were "needed to explain and put the

11     defendant's statements into context."  (*Id.* at 231-32).  The trial court indicated it would entertain

12     a limiting instruction if requested by the defense.  (*Id.*at 233).  Trial counsel did not raise any

13     other objections to the evidence.

14     The recorded interview was played for the jury.  (*See* Do. 54-4 at 240-41).  During the

15     interview, Tosta questioned Petitioner about Doe's injuries and Petitioner initially said Doe had

16     sat on a plunger.  (Doc. 54-3 at 12-14).  After informing Petitioner that Doe reported Petitioner

17     had caused her injuries, Tosta said: "And in looking at the injuries on the medical records by the

18     doctor and the photos taken, that injury did not cause [sic] by a plunger. Okay?"  (*Id.* at 14).

19     Tosta continued:

20              And the doctor said it did not happen that way. Okay? And because
                the doctor did not believe her statement and they did what's called a
21              sexual assault examination on her that night, and we have swabs
                from her rectum. Okay? So I understand that you're saying that she
22              sat on a plunger. But I don't believe that to be true. Okay?

23     (*Id.* at 14-15).  Tosta referred to Petitioner's explanation as "ridiculous" and something "a

24     normal, prudent person wouldn't believe."  (*Id.* at 15).  Tosta made additional comments that he

25     knew the plunger story was not true, and Petitioner eventually told him he put his fingers in Doe's

26     rectum accidentally.  (*Id.* at 17-18).  Tosta then began to question Petitioner regarding the amount

27     of force that he used, commenting that "something happened for you to use that amount of force"

28     and Petitioner's claim that it was accidental did "not make sense."  (*Id.* at 23-27).  When

11

1  Petitioner tried to explain Doe's bruising on her buttock by saying she bruised easily and was

2  anemic, Tosta replied "[t]hat's excuse after excuse." (*Id.* at 27). As the questioning continued,

3  Tosta made statements that he knew Petitioner's "hand went up her rectum," he knew Petitioner

4  lied to the police, and Petitioner was not telling the truth (*Id.* at 29-32).

5      Tosta admitted on direct examination that he used a ruse regarding having additional

6  evidence while interviewing Petitioner and explained his use of different interrogation techniques

7  "in hopes of a search for the truth." (Doc. 54-4 at 242-47). Tosta specifically admitted to lying

8  about having DNA evidence, a doctor's opinion, and the results of a sexual assault exam. (*Id.* at

9  242). On cross-examination, defense counsel highlighted that despite Tosta's use of different

10 interrogation techniques, Petitioner maintained the incident was accidental. (*Id.*at 250-51).

11     During discussions about jury instructions, the trial court asked defense counsel whether

12 he was requesting a limiting instruction in light of how Tosta testified. (Doc. 54-4 at 267).

13 Defense counsel indicated that "[b]ased on the comments made during direct examination, …

14 that's better than any jury instruction." (*Id.*).

15     **2. Law and Analysis**

16     A claim of ineffective assistance of counsel is evaluated under the two-prong test set out

17 in *Strickland v. Washington*, 466 U.S. 668 (1984). Under this test, "a petitioner must prove: (1)

18 that his counsel's performance fell below an objective standard of reasonableness (the deficient

19 performance prong); and (2) that there is a reasonable probability of a more favorable outcome if

20 counsel performed effectively (the prejudice prong)." *Rogers v. Dzurenda*, 25 F.4th 1171, 1181

21 (9th Cir. 2022) (citing *Strickland*, 466 U.S. at 687-88, 694). While a petitioner must prove both

22 prongs to be entitled to relief, "a court need not determine whether counsel's performance was

23 deficient before examining the prejudice suffered by the defendant as a result of the alleged

24 deficiencies." *Strickland*, 466 U.S. at 697.

25     In the appellate context, the first prong of the *Strickland* test requires a petitioner "to

26 demonstrate that counsel acted unreasonably in failing to discover and brief a merit-worthy

27 issue." *Moormann v. Ryan*, 628 F.3d 1102, 1107 (9th Cir. 2010). As to the prejudice prong, "the

28 petitioner must demonstrate a reasonable probability that, but for appellate counsel's failure to

1   raise the issue, the petitioner would have prevailed in his appeal." *Id.*  Thus, when an ineffective

2   assistance of appellate counsel claim is based on a failure to raise issues regarding the

3   effectiveness of trial counsel, a court "must first assess the merits of the underlying claims that

4   trial counsel provided constitutionally deficient representation." *Id.* at 1107-08.  "If trial

5   counsel's performance was not objectively unreasonable or did not prejudice [the Petitioner], then

6   appellate counsel did not act unreasonably in failing to raise a meritless claim of ineffective

7   assistance of counsel, and [the petitioner] was not prejudiced by appellate counsel's omission."

8   *Id.* at 1108.

9         To satisfy the deficient performance prong regarding trial counsel, "the petitioner must

10  show that counsel made errors so serious that they were not functioning as the counsel guaranteed

11  the defendant by the Sixth Amendment." *Rogers*, 25 F.4th at 1181 (quotations and alterations

12  omitted).  "Because even the best criminal defense attorneys would not defend a particular client

13  in the same way, leeway must be allowed for tactical decisions at trial. Courts must also adopt

14  counsel's perspective at the time of the challenged conduct to avoid the distorting effects of

15  hindsight." *Id.*  "The prejudice prong focuses on the question whether counsel's deficient

16  performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id.*

17  at 1182.  In making this assessment, a reviewing court must "compare the evidence that actually

18  was presented to the jury with the evidence that might have been presented had counsel acted

19  differently." *Hernandez v. Chappell*, 923 F.3d 544, 551 (9th Cir. 2019).

20        Here, the state courts could have reasonably determined that trial counsel's performance

21  was not deficient.  Petitioner argues that "[i]f trial counsel had made a motion to exclude [Tosta's

22  opinions], the trial court would have been required to exclude them." (Doc. 29 at 26).  (Accord

23  Doc. 56 at 5).  However, as Respondent argues, the cases Petitioner cites do "nothing to show that

24  Tosta's statements during the interview were testimony (or even offered to show Tosta actually

25  disbelieved Petitioner), nor that Tosta's interview statements were inadmissible as context for

26  Petitioner's statements." (Doc. 55 at 21).  For example, in *Dubria v. Smith*, 224 F.3d 995 (9th

27  Cir. 2000), one of Petitioner's cited cases, the Ninth Circuit addressed circumstances nearly

28  identical to those presented here—the petitioner, Dr. Samson Dubria ("Dubria") challenged the

13

1  failure to redact a tape and transcript of a police interview that included "statements of disbelief

2  of Dubria's story, opinions concerning Dubria's guilt, elaborations of the police theory of [the

3  victim's] death, and references to Dubria's involvement in the crime." *Dubria*, 224 F.3d at 1001.

4  The Ninth Circuit rejected Dubria's argument that the failure to redact violated his due process

5  rights because "[t]he questions and comments by [the detective] placed Dubria's answers in

6  context, much like a prosecutor's questions at trial;" the contents of the statements did not suggest

7  "evidence or theories of the case that were not presented at trial;" and pre-trial interview

8  statements are "not the types of statements that carry any special aura of reliability." *Id.* at 1001-

9  02. Thus, *Dubria* does not support Petitioner's position that the trial court would have been

10  *required* to redact the transcripts.

11        Further, trial counsel's decision not to seek redaction "might be considered sound trial

12  strategy." *Cullen v. Pinholster*, 563 U.S. 170, 191 (2011). In response to trial counsel's objection

13  on other grounds, the trial court indicated it intended to allow the evidence because Tosta's

14  statements were necessary to provide context to Petitioner's statements. Thus, trial counsel

15  reasonably could have determined it would be futile to seek redaction and instead formed a

16  strategy to cross examine Tosta in a manner that highlighted that despite Tosta's insistence he

17  was not being truthful, Petitioner maintained that the incident was accidental.

18        Even if trial counsel did perform deficiently, the state court reasonably could conclude

19  that Petitioner was not prejudiced. Tosta admitted at trial that he used a ruse and was trying to get

20  information from Petitioner such that the jury was aware Tosta's statements were not all truthful.

21  There was also significant evidence to support Petitioner's conviction beyond Tosta's statements.

22  Doe testified that Petitioner told her about sticking "his whole hand in [another woman's] vagina,

23  and he said he was going to do the same thing to [her];" while she and Petitioner were fighting

24  "he put [her] up against the wall and knocked over the lamp, … and he put his hand in [her] butt;"

25  she and Petitioner came up with the plunger story together because she "didn't want him to go to

26  jail, because [she] loved him;" and Petitioner had been violent towards her in the past, including

27  breaking her nose. (Doc. 54-4 at 88, 96-98, 102, 116). Pictures of Doe's bruising were offered

28  into evidence. (*See id.* at 207-09, 215-18). Doe's friend testified to seeing Petitioner drag Doe by

14

1    the hair on previous occasions and witnessing Petitioner tying Doe to a bed and putting a pillow

2    over her face until she fainted.  (*Id.* at 168-73).

3        Critically, Vrh's own testimony at trial differed from what he told Tosta.  At trial he

4    testified that he spilled a sex lubricant over his hand; he initially only put two fingers in what he

5    thought was Doe's vagina and worked his way up to four fingers; he could not tell the difference

6    between her anus and her vagina because it was "super slippery" from the lubricant; after he

7    "tucked" his thumb in, his "hand popped in;" and he thought Doe was moaning in pleasure so he

8    "pushed it in a little bit further."  (Doc. 54-5 at 99-104).  However, during the interrogation,

9    Petitioner never mentioned the lubricant, despite Tosta pressing him about the amount of force

10   that would be needed to insert his entire hand into Doe's rectum.  (*See* Doc. 54-3 at 20-33).

11   While Petitioner testified that he did not tell Tosta about the lubricant because Tosta did not let

12   him and kept interrupting him, a jury could reasonably have relied on the differences between

13   Petitioner's interview statements and trial testimony to conclude he was not being truthful about

14   what happened.

15       Because trial counsel did not perform deficiently in failing to seek redaction and, even if

16   he did, Petitioner has not shown prejudice, appellate counsel did not act unreasonably in failing to

17   raise an ineffective assistance claim and Petitioner was not prejudiced by appellate counsel's

18   failure.  *Moormann*, 628 F.3d at 1108.  Thus, a reasonable basis exists for the state court's

19   summary denial of Petitioner's claim and that denial was not contrary to, or an unreasonable

20   application of, clearly established Supreme Court precedent, nor was it based on an unreasonable

21   determination of the facts.  Accordingly, the undersigned recommends that ground two be denied.

22   **IV.    CERTIFICATE OF APPEALABILITY**

23       "[A] state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a

24   district court's denial of his application."  *Miller-El v. Cockell*, 537 U.S. 322, 335-36 (2003). Rule

25   11 of the Rules Governing § 2254 Cases requires a court to "issue or deny a certificate of

26   appealability when it enters a final order adverse to the applicant."  A certificate of appealability

27   will issue "only if the applicant has made a substantial showing of the denial of a constitutional

28   right."  28 U.S.C. § 2253(c)(2).  To make this showing for claims rejected on procedural grounds,

a movant must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of denial of a constitutional right and that jurists of reason would find it debatable whether the district was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a claim is rejected on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a certificate of appealability.

Because Petitioner has not made a substantial showing of the denial of a constitutional right, the undersigned recommends that the court decline to issue a certificate of appealability.

*Remainder of This Page Intentionally Left Blank*

1

**V.      RECOMMENDATION**

2

For the reasons set forth above, it is **RECOMMENDED**:

3

1.  Petitioner be DENIED all relief on his Petition for Writ of Habeas Corpus (Doc. 34);

4

and

5

2.  Petitioner be denied a certificate of appealability.

6

These findings and recommendations are submitted to the district judge assigned to this

7

action, pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the

8

United States District Court, Eastern District of California.  Within **14 days** of service of this

9

recommendation, any party may file written objections to these findings and recommendations

10

with the Court and serve a copy on all parties.  Such a document should be captioned "Objections

11

to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without

12

leave of Court and good cause shown.  The Court will not consider exhibits attached to the

13

Objections.  To the extent a party wishes to refer to any exhibit(s), the party should reference the

14

exhibit in the record by its CM/ECF document and page number, when possible, or otherwise

15

reference the exhibit with specificity.  Any pages filed in excess of the 15-page limitation may be

16

disregarded by the District Judge when reviewing these Findings and Recommendations under 28

17

U.S.C. § 636(b)(l)(C).  The parties are advised that failure to file objections within the specified

18

time may waive the right to appeal the district judge's order.  *Wilkerson v. Wheeler*, 772 F.3d

19

834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

20

IT IS SO ORDERED.

21

Dated:   __April 8, 2025__

22

_____
UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28